Sheehan & Associates, P.C.
Spencer Sheehan
spencer@spencersheehan.com
(516) 303-0552

United States District Court
Eastern District of New York                                    2:19-cv-02488

| | |
|---|---|
| Kenneth Copeland, John Doe, individually and on behalf of all others similarly situated | |
| Plaintiffs | |
| - against - | Complaint |
| Post Consumer Brands, LLC | |
| Defendant | |

1.      Post Consumer Brands, LLC ("defendant") manufactures, processes, distributes, markets, labels and sells breakfast cereals and snacks made from rice and containing cocoa-based ingredients under the "PEBBLES" brand based on the iconic cartoon Flintstones (the "Products").

Cocoa Pebbles              Peanut Butter & Cocoa Pebbles              Cocoa Pebbles Treats





2.      All foods are required to have on the front label an appropriate descriptive name, that is straightforward and not a brand name.

1

3.      For instance, "Cocoa Pebbles" is the brand name and does not purport to describe the nature of the food because "pebbles" are small rocks.

4.      Underneath the brand name, the Cocoa Pebbles contain a more appropriately descriptive (though alleged within to be misleading) term, "Sweetened Naturally & Artificially Chocolate Flavored Rice Cereal with Real Cocoa."

5.      The relevant representations include the product names, Cocoa Pebbles, Peanut Butter & Cocoa Pebbles, Cocoa Pebbles Treats, the statements of identity for Cocoa Pebbles Cocoa Pebbles Treats and the front label claim for the Peanut Butter & Cocoa Pebbles.[1]



Sweetened Naturally & Artificially Chocolate Flavored Rice Cereal with Real Cocoa (Statement of Identity)



Marshmallow Cereal Bars Natural and Artificial Chocolate Flavor with Real Cocoa (Statement of Identity)



Made with Real Peanut Butter & Cocoa (Claim)

6.      All of the Products declare or highlight certain ingredients or components on the front labels through the above-described statement relating to the presence of "Real Cocoa."

---

[1] 21 C.F.R. §101.3(b)(3).

2

7.     According to a trade publication, "[M]ore consumers are looking for authenticity and 'real' ingredients in their foods, including sweet ingredients like real sugar" and cocoa.[2]

8.     Approximately two-thirds of consumers "noted that health, nutrition and making better choices are factors in their purchasing decisions on indulgent items or desserts," and "[H]alf of shoppers look for 'real' ingredients."[3]

9.     Another study found "nearly three-quarters of U.S. consumers find it important to recognize the ingredients in the products they buy,"[4] confirming that "recognition of ingredients to be one of the biggest drivers of product choice, with more than half of respondents (52 percent) considering it to be an important factor."[5]

10.     This is not to say a "reasonable consumer" expects chocolate-y breakfast cereals based on a cartoon to be healthy or nutrient-rich – they are by definition an indulgence and not generally consumed for their salutary effects in the same way a cereal like oat bran would.

11.     But consumers expect and seek out those indulgent foods that let them enjoy a "guilty pleasure" while taking comfort in other attributes of those products.[6]

12.     One industry leader described this paradigm, where "simple ingredients…elevate a classic indulgence to a premium, more permissible experience," citing a donut shop which only uses certified organic ingredients to make donuts from scratch.

---

[2] Beth Day, Indulgence driving innovation in baked foods, November 3, 2016 FoodBusinessNews.net, https://www.foodbusinessnews.net/articles/7110-indulgence-driving-innovation-in-baked-foods
[3] Progressive Grocer, Bakery Connects Emotionally With Consumers, Drives Grocery Sales, April 8, 2019, https://progressivegrocer.com/bakery-connects-emotionally-consumers-drives-grocery-sales
[4] https://www.snackandbakery.com/articles/88762-clean-label-snacks-and-bakery-move-from-novelty-to-mainstream
[5] https://www.foodinsiderjournal.com/clean-label/75-consumers-will-pay-extra-clean-label-ingredients
[6] Monica Watrous, The new pleasure paradigm, Food Business News, Oct. 4, 2017, https://www.foodbusinessnews.net/articles/10688-the-new-pleasure-paradigm ("To tap into today's pleasure principles, it is critical to move beyond the temporary "high" often associated with pleasure and focus on real ingredients").

13.   Defendant has tapped into this consumer demand for simple, "real ingredients" by promoting the products as made with "real cocoa."

14.   The Products' representations are misleading because despite the front-label claims of "real cocoa," they do not contain this component in the amount, type and/or form which a reasonable consumer would expect based on the claims.

15.   The "with Real Cocoa" representation is false, misleading and deceptive because the ingredient lists disclose they contain "Cocoa (Processed with Alkali)."

| Cocoa Pebbles | Cocoa Pebbles Treats | Peanut Butter & Cocoa Pebbles |
|---|---|---|
| **INGREDIENTS:** RICE, SUGAR, HYDROGENATED VEGETABLE OIL (COCONUT AND PALM KERNEL OILS), COCOA (PROCESSED WITH ALKALI), SALT, CARAMEL COLOR, NATURAL AND ARTIFICIAL FLAVOR. **VITAMINS AND MINERALS:** NIACINAMIDE, REDUCED IRON, ZINC OXIDE (SOURCE OF ZINC), VITAMIN B6, VITAMIN A PALMITATE, RIBOFLAVIN (VITAMIN B2), THIAMIN MONONITRATE (VITAMIN B1), FOLIC ACID, VITAMIN B12, VITAMIN D3. | Ingredients: Rice, Sugar, Corn Syrup, Fructose, Vegetable Oil (Hydrogenated Coconut, and Palm Kernel, Palm Kernel, Palm, Canola), Gelatin, Cocoa (Processed with Alkali), Glycerin, Salt, Caramel Color, Whey Powder, Soy Lecithin, Natural and Artificial Flavor, Non Fat Dry Milk Solids, Whole Milk Solids, Sulfites. | **Ingredients:** Rice, Sugar, Peanut Butter (peanuts, dextrose, hydrogenated vegetable oil (cottonseed, soybean, canola), salt), Dextrose, Canola Oil, Salt, Cocoa processed with Alkali, Natural and Artificial Flavor, Molasses, Caramel Color, BHT added to preserve freshness. **Vitamins and Minerals:** Niacinamide (Vitamin B3), Reduced Iron, Zinc Oxide, Vitamin A Palmitate, Pyridoxine Hydrochloride (Vitamin B6), Thiamin Mononitrate (Vitamin B1), Riboflavin (Vitamin B2), Folic Acid, Vitamin D3, Vitamin B12. **CONTAINS PEANUTS.** |

16.   All of the Products contain cocoa processed with alkali.

17.   Cocoa powder ("cocoa") is the "core of a chocolate's flavor, without any extra fat, sugar, or milk to get in the way."

18.   Cocoa powder results from crushing the edible portions of the cocoa bean – "nibs" – into a fine paste, releasing and melting the nibs' fat content (cocoa butter).

19.   The combination of crushed, ground nibs and cocoa butter produces chocolate liquor.

20.   The chocolate liquor is pressed between hydraulic plates to form hard-cocoa "press cakes" and the excess cocoa butter is removed.

4

21.     The cocoa cakes are grated into fine powders.

22.     The types of powders produced are based on the amount of cocoa butter, or fat, remaining in the powder: high or "breakfast cocoa" (22% +), medium or "cocoa" (10-12%) and lowfat cocoa (less than 10%).

23.     The cocoa powder can be further treated through alkalization ("Dutch-process" or alkalized) or used in its non-alkalized state.

24.     The use and presence of alkalis reduces the acidity of cocoa powder, giving it a noticeably darker color of the Products but detracting from the "real cocoa" taste.

<u>Non-Alkalized</u>                                                <u>Alkalized</u>



25.     The claim of "real cocoa" is intended to differentiate the cocoa in the Products from other cocoa ingredients bearing the standard cocoa designation, i.e., "cocoa" or "cocoa processed with alkali," and implies the cocoa present in the Products is nutritionally and organoleptically superior.[7]

26.     Because cocoa is a commonly used and valued product, consumers have certain expectations based on experience when "cocoa" is declared on a label.

27.     No reasonable consumer would expect the cocoa in the Products to have been made

---

[7] 21 C.F.R. §130.11   Label designations of ingredients for standardized foods.

with and contain alkalis because "real," in modifying the word "cocoa," represents the cocoa powder is included in its most simplified form.

28.     According to Nielsen market research, a majority of consumers "say that when it comes to ingredient trends, a back-to-basics mind-set, focused on simple ingredients and fewer artificial or processed foods, is a priority."[8]

29.     While the Products' statements of identity acknowledge the presence of artificial ingredients,

30.     It is false, deceptive and misleading to conspicuously promote "real cocoa" without any reference to the presence and use of alkalis either preceding or following because "real cocoa" without any modifying terms implies the absence of artificial ingredients in the cocoa.

31.     The Products' use of the optional alkali ingredients significantly distinguishes its cocoa component from cocoa powder which does not contain alkali.

32.     The presence or absence of alkalis effect the taste and color of the cocoa powder to such an extent that they are a characterizing feature and effect whether a product that promotes cocoa will be purchased.

33.     Though it may be duplicative and unnecessary to indicate the presence of all optional ingredients used in standardized foods wherever the affected ingredient is declared, other than the ingredient list, this is not the case where an optional ingredient (alkali) is characterizing towards the affected ingredient (cocoa).

34.     The representation "real cocoa" is false, deceptive and misleading because

---

[8] Reaching for Real Ingredients: Avoiding the Artificial, Nielsen, CPG, FMCG & Retail, Sept. 6, 2016 https://www.nielsen.com/us/en/insights/news/2016/reaching-for-real-ingredients-avoiding-the-artificial.html

consumers expect "real cocoa" to indicate a higher quality cocoa than had the ingredient merely been accurately identified as "cocoa," (minus the descriptor "real"), the term for cocoa between 10 and 22 percent fat.

35.     By misrepresenting medium fat cocoa which has been modified in flavor, color and nutritionally, as "real cocoa," consumers will expect the cocoa powder component to be nutritionally and organoleptically superior than it actually is.

36.     Such a type of higher fat cocoa – above 22 percent – is referred to as breakfast cocoa, which has a more intense "chocolate-y" flavor.

37.     In fact, "real cocoa" when used in the context of breakfast-type foods, can be and is interpreted as referring to a higher-quality cocoa (breakfast cocoa).

38.     While the use of "Cocoa" in the product name, "Cocoa Pebbles" is not misleading because there is no attempt to distinguish one variety of "cocoa" to another, the statements of identity and product claims do just that.

39.     For instance, other brands of breakfast cereal are made with cocoa and do not attempt at distinguishing the variety or type of cocoa they contain, so the consumer will not be misled.

<u>Front Label</u>                                    <u>Ingredient List</u>



Ingredients: Rice, sugar, cocoa processed with alkali, semisweet chocolate (sugar, chocolate, dextrose), contains 2% or less of hydrogenated vegetable oil (coconut, soybean and/or cottonseed), salt, malt flavor, natural flavor.

40.    When consumers see similar products which promote the presence of cocoa, they will choose the product which has the central ingredient in a higher quality form.

41.    The Products contain other representations which are misleading and deceptive.

42.    As a result of the false and misleading labeling, defendant sold the Products at a premium price – no less than $4.99 per box, excluding tax – compared to other similar products which are represented in a non-misleading way.

Jurisdiction and Venue

43.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

44.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

45.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

46.   Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

47.   A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

48.   Plaintiff is a citizen of Kings County, New York.

49.   John and Jane Doe plaintiffs are citizens of the other 49 states.

50.   John and Jane Doe are individuals in the other 49 states who have been affected by the conduct alleged here but their true identities are not fully known.

51.   John and Jane Doe may be used in the complaint to refer to representatives of sub-classes of the various states and at such time their identities will be disclosed.

52.   The allegations as related to laws of other states serves as a placeholder upon joinder or amendment.

53.   Defendant is a Delaware limited liability company with a principal place of business in Lakeville, Minnesota, and no member thereof is a citizen of New York.

54.   During the class period, plaintiffs purchased one or more Products for personal consumption with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

55.   Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

56.   Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

9

<u>Class Allegations</u>

57.    The classes consist of all consumers in the following states: all, New York, California, who purchased any Products subject to the actionable representations during the statutes of limitation.

58.    A class action is superior to other methods for fair and efficient adjudication.

59.    The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

60.    Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

61.    Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

62.    Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

63.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

64.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

65.    Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

66.    Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350, California Consumers</u>

Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA")
and Consumer Protection Statutes of Other States and Territories

67.     Plaintiff and John and Jane Doe plaintiffs, representing the 49 other states where they reside and purchased the Products, incorporate by reference all preceding paragraphs and assert causes of action under the consumer protection statutes of all 50 states.

a.  Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;

b.  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c.  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

d.  California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and  Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et seq.*;

e.  Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f.  Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h.  District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;

i.  Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;

j.  Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;

k.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l.  Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n.  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the

Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s. Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u. Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x. Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. New York General Business Law ("GBL") §§ 349 & 350;

dd. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

ee. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ff.  Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

gg. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

hh. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

ii.  South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

jj.  South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

kk. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

ll.  Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

mm. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

nn. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

oo. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

68.   Named plaintiff asserts causes of action under New York General Business Law ("GBL") §§ 349 & 350.

69.   John Doe plaintiff asserts causes of action under the laws of the other 48 states, including under the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA").

70.   Defendant's representations and omissions are false, unfair, deceptive and misleading and are not unique to the parties and have a broader impact on the public.

71.   Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

13

72.    Plaintiff desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

73.    John Doe California plaintiff and members of the California Subclass engaged in transactions as consumers who bought the Products for personal, family, or household consumption.  Cal. Civ. Code § 1761(d)-(e).

74.    In accordance with Civil Code § 1780(a), John Doe California Plaintiff will seek injunctive and equitable relief for defendant's violations of the CLRA and an injunction to enjoin defendant from continuing its deceptive advertising and sales practices.

75.    In addition, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) & (d), John Doe California Plaintiff will have mailed or have amended the complaint to include a request for damages.

76.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA.

77.    Defendant violated the GBL, CLRA, et seq., by falsely representing to Plaintiffs that the Products contained its central ingredient in its basic, higher quality form, when it was actually modified and of less value than it actually was.

78.    Pursuant to California Civil Code § 1780(a)(2) and (a)(5), John Doe California Plaintiff will seek an order of this Court that includes, but is not limited to, an order requiring Defendant to remove and/or refrain from making representations on the Products' packaging representing that the Products its central ingredient in its basic, higher quality form, when it was actually modified and of less value than it actually was.

79.    Plaintiffs and prospective class members may be irreparably harmed and/or denied

an effective and complete remedy if such an order is not granted.

80.    The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiffs and prospective class members.

81.    Defendant's representations and omissions are false, unfair, deceptive and misleading and are not unique to the parties and have a broader impact on the public.

82.    Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

83.    Plaintiff desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

84.    The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

<u>Violations of California's False Advertising and Unfair Competition Law</u>
(On Behalf of the California Subclass)

85.    John Doe California Plaintiff realleges paragraphs above.

86.    Defendant has falsely advertised the Products by claiming to contain real cocoa.

87.    John Doe California Plaintiff and other members of the California Subclass suffered injury in fact and have lost money or property as a result of Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.

88.    John Doe California Plaintiff will seek an order requiring Defendant to remove and/or refrain from making representations on the Products' packaging, through the Products' name and identification, that the Products consist of real cocoa.

<u>Violations of California's Unfair Competition Law</u>
(On Behalf of the California Subclass)

15

89. John Doe California Plaintiff realleges all paragraphs above.

90. By committing the acts and practices alleged herein, Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the John Doe Plaintiff California Subclass as a whole, by engaging in unlawful, fraudulent, and unfair conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), as alleged above; (b) its violations of the FAL, Cal. Bus. & Prof. Code § 17500 et seq., as alleged above; and (c)its violations of the Cal. Bus. & Prof. Code §§ 17580-17581, as alleged above.

91. Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

92. As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of Products is likely to deceive reasonable consumers.

93. John Doe California Plaintiff and other members of the California Subclass were deceived regarding the purported real cocoa qualities of the Products, as Defendant's marketing, advertising, packaging, and labeling of the Products misrepresent and/or omit the true facts concerning the identity, composition and quality of the Products.

94. Said acts are fraudulent business practices.

95. Defendant's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

96. John Doe California Plaintiff and the other California Subclass members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly

marketed, advertised, packaged, and labeled Products.

97.    There is no benefit to consumers or competition by deceptively marketing and labeling the Products, in the manner described herein.

98.    Pursuant to California Business and Professional Code § 17203, John Doe California Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, requirements that Defendant:

(a) remove and/or refrain from making representations on the Products' packaging representing that the Products contain real cocoa;

(b) provide restitution to John Doe California Plaintiff and the other California Class members;

(c) disgorge all revenues obtained as a result of violations of the UCL; and

(d) pay John Doe California Plaintiff and the California Subclass' attorney fees and costs.

<u>Negligent Misrepresentation</u>

99.    Plaintiff incorporates by references all preceding paragraphs.

100.  Defendant misrepresented the substantive, compositional, health, quality and nutritional attributes of the Products' composition.

101.  Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

102.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge in the production, service and/or sale of the product type.

103.  Defendant negligently misrepresented and/or negligently omitted material facts.

104.  Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

105.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

106.   Plaintiff incorporates by references all preceding paragraphs.

107.   Defendant manufactures and sells products which contain almonds.

108.   The Products warranted to plaintiff and class members that they possessed substantive, functional, nutritional, compositional, organoleptic, sensory, physical and other attributes which they did not.

109.   Plaintiff desired to purchase products which were as described by defendant – made with cocoa in its most basic form.

110.   Defendant sells cookies with "real cocoa" ingredients, purporting to be the ingredient type in its most basic form available such that it can be functionally included in the Products.

111.   Defendant had a duty to disclose and/or provide a non-deceptive description of the Products and knew or should have known same were false or misleading.

112.   This duty is based, in part, on defendant's position as one of the largest users of cocoa in the world.

113.   The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

114.   The Products were not merchantable in their final sale form.

115.   Plaintiff and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

18

116.   Plaintiff incorporates by references all preceding paragraphs.

117.   Defendant's purpose was to mislead consumers who seek products which feature "real" ingredients – "real" referring to the ingredient in its least modified form such that it can be incorporated into a final product.

118.   Defendant's intent was to secure economic advantage in the marketplace against competitors.

119.   Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

120.   Plaintiff incorporates by references all preceding paragraphs.

121.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

 **WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3. Injunctive relief for members of the New York Subclass pursuant to GBL §§ 349 and 350, without limitation;

4.  An award of restitution pursuant to California Business and Professions Code §§ 17203 and 17535 for John Doe California Plaintiff and members of the California Subclass;

5.  An award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for John Doe California Plaintiff members of the California Subclass;

6.  An order enjoining Defendant, pursuant to California Business and Professions Code §§ 17203 and 17535, to remove and/or refrain from using representations on Defendant's Products described here;

7.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law, GBL, CLRA and other statutory claims;

8.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

9.  Such other and further relief as the Court deems just and proper.

Dated:   April 26, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com
Joshua Levin-Epstein

2:19-cv-02488
United States District Court
Eastern District of New York

Kenneth Copeland individually and on behalf of all others similarly situated

Plaintiff

- against -

Post Consumer Brands, LLC

Defendant

## Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  April 26, 2019

/s/ Spencer Sheehan
Spencer Sheehan